UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER HEARD and
ANDREA MCKAHAN,[1]

        Plaintiffs,                Case No. 22-cv-10357
                                    Honorable Linda V. Parker

v.

CITY OF HIGHLAND PARK,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL (ECF NO. 43)

This lawsuit arises from Plaintiffs Jennifer Heard and Andrea McKahan's employment as police officers with the City of Highland Park Police Department ("Department").  In a Complaint filed February 18, 2022, Plaintiffs allege the following claims against Defendant City of Highland Park ("City"): (I) violations of 42 U.S.C. § 1981; (II) hostile work environment based on Plaintiffs' sex (female) and race (Caucasian) in violation of 42 U.S.C. § 1983; (III) an unlawful seizure of Heard in violation of her Fourth Amendment rights; and (IV) an

---

[1] Plaintiff McKahan's name is misspelled on the docket and in the Complaint, alternatively as "Mackahan" and "Mckahan."  The Court is amending the case caption to reflect the correct spelling as reflected in her deposition testimony (ECF No. 43-3 at PageID. 425) and affidavit (ECF No. 45-4).

unlawful search of Heard in violation of her Fourth Amendment rights.  (*See generally* ECF No. 1.)

The matter is presently before the Court on the City's motion for summary judgment and dismissal pursuant to Federal Rules of Civil Procedure 56(c) and 12(b)(6), respectively.  (ECF No. 43.)  The motion has been fully briefed.  (ECF Nos. 45, 46.)  The Court finds oral argument unnecessary to decide the City's motion.  *See* E.D. Mich. LR 7.1(f).  For the reasons that follow, the Court is granting the motion.

## I.   Applicable Standards

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

2

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

3

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1). Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact"); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

4

## II.    Factual Background

Heard joined the Department as a police officer in December 2017, and she continues to be employed in that capacity.  (ECF No. 1 at PageID. 1, ¶ 1.) McKahan joined the Department as a police officer in August 2019, but she resigned in September 2020.  (ECF No. 43-3 at PageID. 442, 446-47.)  Plaintiffs are Caucasian females.  (ECF No. 1 at PageID. 3, ¶ 6.)

On or about December 2, 2019, Heard was advised by the City's Human Resources Director, Rasheka Christian, that she had been selected to undergo drug testing at Concentra, a medical facility utilized by the City.  (*Id.* at PageID. 11, ¶ 42.)  Another female Caucasian employee, Sergeant Heather Holcomb, also had been selected.  (*Id.* at PageID. 12, ¶ 44.)  Heard complied, under protest, and tested negative.  (ECF No. 43-2 at PageID. 362, 364.)  Heard and Holcomb were the only members of the Department ordered to undergo drug testing.  (ECF No. 1 at PageID. 12, ¶ 44.)

Shortly before Heard and Holcomb were selected, the City had adopted a drug testing policy for Department employees.  (*See* ECF No. 43-8.)  The policy applied to "every member of the agency, regardless of rank or assignment[.]"  (*Id*. at PageID. 561, § B.3.)  The policy provided for random testing, meaning "a method of selection in which each and every sworn member of the law

5

enforcement agency, regardless of rank or assignment, has an equal chance to be selected for drug testing each and every time a selection is conducted." (*Id.*)

The City utilized a third party to randomly select employees for testing. (ECF No. 43-9 at PageID. 585.)  No one in the City made the selections.[2] (*Id.*) The human resources director then received a letter identifying the selected individual by name or social security number. (*Id.* at PageID. 585-86.)  The human resources director then prepared a form for Concentra and sent it to the Department for delivery to the employee. (*Id.* at PageID. 586.)

Shortly after the drug testing policy was instituted, the union representing the City's Fire Department employees—who also were subjected to a drug testing policy—objected to it and the policy was rescinded for fire and police department employees. (*Id.* at PageID. 592, ECF No. 43-2 at PageID. 360-61.)  Had the policy not been rescinded, every Department employee eventually would have been randomly tested. (ECF No. 43-9 at PageID. 592.)

---

[2]  To counter this assertion, Plaintiffs point to a document describing the random selection process, which reflects that the "Random Pool" from which selections are made is created by the employer uploading its employee list. (*See* ECF No. 45 at PageID. 670-71 & n.8 (citing ECF No. 43-10).)  However, Plaintiffs offer no evidence suggesting that the list supplied by the City was limited to female Caucasian employees instead of all Department employees.  Thus, this evidence fails to create a question of fact regarding the randomness of the drug screening selection process.

Plaintiffs allege that they were subjected to a discriminatory and hostile work environment during their employment with the Department.  (*See generally* ECF No. 1.)  This allegation is based, in part, on the drug testing of Heard described above.  It is based also on an incident on May 22, 2018, when Department Corporal Gartha John told Heard that she could not accompany a violent suspect to the hospital via ambulance, saying that female officers cannot be involved in such transportations and that he "need[ed] a guy to go."  (ECF No. 1 at PageID. 13-15, ¶¶ 51-60.)  Heard complained about John's conduct but alleges the issue was never properly investigated or addressed.  (*Id*. at PageID. 15-17, ¶¶ 64-73.)

Plaintiffs outline additional behavior in their Complaint:

- Heard alleges that John ignored her and/or required her to use his name when asking for vehicle assignments.  (ECF No. 1 at PageID. 17-19, ¶¶ 76-83.)

- McKahan claims John assigned her to complete more reports than a male officer.  (*Id.* at PageID. 19, ¶ 87.)

- Plaintiffs assert that they did not receive backup on several occasions.  (*Id.* at PageID. 20, ¶ 88; *id.* at PageID. 20-24, ¶¶ 91-110.)

- Plaintiffs complain about an incident during roll call when John, referring to Heard, stated:  "A certain female thinks she can jump the ranks of command and tell me."  (*Id.* at PageID. 27-28, ¶¶ 126-28.)

- Plaintiffs were subjected to frivolous complaints.  (*Id.* at PageID. 25 ¶¶ 113-114, 116 (complaints against Heard by fellow officer Aaron Haley); *id.* at PageID. 25-26, ¶¶ 117-18 (the deputy police chief

7

investigated Heard for failure to investigate a rape); *id.* at PageID 26, ¶¶ 120-21 (investigation of McKahan for "failure to act"); *id.* at PageID. 27, ¶¶ 123-25 (threats by a fellow employee to pull all of Heard's traffic stops in response to a complaint from a citizen); *id.* at PageID. 28, ¶¶ 129-131 ("investigation" of Heard by the deputy police chief for issuing a ticket for a plate violation); *id.* at PageID. 29, ¶¶ 135-36 (investigation of Heard by a corporal regarding "taser competitions").)

- John commented about McKahan's hair, telling her to put it in a ponytail.  (ECF No. 43-3 at PageID. 499.)

- John often yelled and/or criticized McKahan, sometimes behind the station and repeatedly in front of the public.  (ECF No. 1 at PageID. 20, ¶ 89; PageID. 30-31, ¶¶ 139, 142, 144.)

## III.   Applicable Law & Analysis

### A.   Plaintiffs' § 1981 Claim (Count I)

The City seeks dismissal of Plaintiffs' § 1981 claim, arguing that the United States Supreme Court found no private cause of action against municipalities under the statute in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1981).  *See also Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008) (citing *Jett*, 491 U.S. at 732) ("§ 1981's implicit cause of action does not extend to suits brought against state actors.").  Plaintiffs' response to the City's arguments is without merit and, in fact, acknowledges that "§ 1983 provides the private right of action against a municipality for violation of § 1981" (ECF No. 45 at PageID. 664.)  The cases Plaintiffs cite in response to the City's motion in fact support the dismissal of their § 1981 claim.  *See Onyeanusi v. District of Columbia*, 69 F.

8

Supp. 3d 106, 107 (D.D.C. 2014) (dismissing the plaintiff's § 1981 claim against the district based on the "virtually unanimous" holding of the federal courts that § 1983, not § 1981, is the proper vehicle for alleging civil rights violations by state actors); *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 34 (D.D.C. 2013) ("hold[ing] that [the] plaintiff cannot maintain an independent cause of action under § 1981 against the District of Columbia").

The Court is granting the City's motion to dismiss this claim.

### B.   Heard's Fourth Amendment Claims (Counts III & IV)

Heard claims violations of her Fourth Amendment rights based on the drug test she was forced to undergo.  The City contends that this claim fails because the drug testing policy was neither unconstitutional on its face nor as applied. Plaintiffs do not challenge the policy's facial constitutionality.  (*See* ECF No. 45 at PageID 653.)  They argue, however, that the policy was discriminatorily applied to only female Caucasian police officers.

Plaintiffs lack evidence, however, to support their mere suspicion that Heard or Holcomb were targeted for testing because of their race or sex.  Plaintiffs offer no facts to counter the City's evidence that the selection was, first, completely random and, second, made by a third party and not any City employee.  As discussed above, while Plaintiffs point out that the City uploaded the names to the "Random Pool List" from which the third party made its random selections, they

offer no evidence that the City uploaded anything but a complete list of Department employees.  In other words, it is pure conjecture that the list from which random selections were made was limited to female Caucasian employees. "[I]t is well-established in [Supreme Court and Sixth Circuit] case law that a party may not avoid summary judgment by resorting to 'speculation, conjecture, or fantasy.'"  *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53 (1986).  Contrary to Plaintiffs' assertion, the City does not have to explain how this third party conducts the random selection to avoid summary judgment.  It is Plaintiffs' burden, instead, to present some evidence in response to the City's motion from which a reasonable jury could conclude that the selection was based on race or sex, which they do not.

In other words, Plaintiffs fail to create a genuine issue of material fact from which a jury could conclude that race or sex was a factor in Heard's drug testing. Therefore, Heard's Fourth Amendment claims also are being dismissed.

## C.   Plaintiffs' § 1983 Hostile Work Environment/Discrimination Claim (Count II)

The City seeks summary judgment with respect to Plaintiffs' § 1983 claim, arguing that there is no evidence of a deprivation of their constitutional rights through an "official policy or custom," as required to impose municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).  In

response, Plaintiffs argue that the City can be held liable for the acts of a single decisionmaker pursuant to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

Section 1983 creates a federal cause of action against state or local officials who deprive a person of a civil right while acting under color of state law. A municipality is not liable for a civil rights violation simply due to an "injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citations omitted).

Instead, to prevail on a § 1983 claim against a municipality, the plaintiff must show that the alleged federal violation occurred because of a municipal "policy" or "custom." *Monell*, 436 U.S. at 691. This requirement "distinguish[es] the acts of the *municipality* from the acts of *employees* of the municipality." *Pembaur*, 475 U.S. at 479. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1997) (quoting *Monell*, 436 U.S. at 691) ("A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute

11

a custom or usage with the force of law.'").  "It must reflect a course of action deliberately chosen from among various alternatives."  *Doe*, 103 F.3d at 508 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 823 (1985)).  Further, the policy or custom must "be the moving force behind the violation of the plaintiff's constitutional rights."  *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)); *see also Monell*, 436 U.S. at 694.

In arguing that a single act by a single decisionmaker can establish an "official policy or custom" (*see* ECF No. 45 at PageID. 671, 675), Plaintiffs ignore the Supreme Court's indication in *Pembaur* that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability."  475 U.S. at 481.  Instead:

> [m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Id.* at 481-83 (internal citation and footnotes omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (explaining that "[w]hen an official's discretionary decisions are constrained by policies not of that official's making,

those policies, rather than the subordinate's departures from them, are the act of the municipality"); *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("Discretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from respondeat superior liability."). Plaintiffs fail to show that John, the police chief, or the deputy police chief were "decisionmaker[s] possess[ing] final authority to establish municipal policy with respect to the action[s] [at issue]."[3]

Thus, the City is entitled to summary judgment with respect to Plaintiffs' § 1983 claim.

---

[3] Notably, the bulk of Plaintiffs' complaints relate to conduct by John, an hourly Department employee. (*See* ECF No. 46-2 at PageID. 943.) Except for the police chief's alleged failure to include Heard in "meet ups," Plaintiffs' allegations concerning the police chief and deputy police chief relate to the purported failure to respond to complaints about John. The factual record, however, does not reflect that Plaintiffs shared information with the police chief or deputy police chief to indicate that John's conduct was, or was perceived to be, discriminatory. *See Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008) (citations omitted) (setting forth the elements to establish municipal liability under an "inaction" theory, which includes "notice or constructive notice" of "the existence of a clear and persistent pattern of discrimination by municipal employees"); *see also id.* at 600 (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)) ("In order to establish that the City's 'failure to act can be said to amount to an official policy of inaction,' the evidence must demonstrate more than just 'a collection of sloppy, or even reckless, oversights'. . . .. Rather, the record must show that the City 'consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct.'").

## IV. Conclusion

For the reasons set forth in the previous section, Plaintiffs' § 1981 claim against the City fails as a matter of law.  Plaintiffs fail to present evidence in response to the City's showing that Heard and Holcomb were randomly selected for drug testing, and not because of their sex or race.  In other words, Plaintiffs fail to establish a genuine issue of material fact on this issue so that Heard's Fourth Amendment claims must be decided by a jury.  Instead, the City is entitled to summary judgment on those claims.  Finally, Plaintiffs fail to present evidence from which a reasonable juror could find that a City policy or custom was the moving force behind the alleged violations of their civil rights.  Thus, the City also is entitled to summary judgment on Plaintiffs' § 1983 claim.

Accordingly,

**IT IS ORDERED** that Defendant City of Highland Park's motion for summary judgment and dismissal (ECF No. 43) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 21, 2024

14